739 So.2d 1005 (1999)
Charles P. STALL
v.
PROFESSIONAL DIVERS OF NEW ORLEANS, INC.
No. 99-CA-262.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
Rehearing Denied September 20, 1999.
*1006 Richard C. Trahant, Metairie, Louisiana, Attorney for Plaintiff/Appellant.
Ernest E. Barrow, II, Gretna, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
DALEY, Judge.
This appeal arises from a suit filed by Charles Stall, plaintiff, against Professional Divers of New Orleans, defendant, for past due wages, attorney fees, and statutory penalties. For reasons assigned, we affirm in part and reverse in part.
Charles Stall was hired by the defendant as an offshore diver in 1991. Due to health problems which developed in 1994, he was no longer able to dive. In May 1994 he accepted a position in sales with the defendant. His job duties in this position included soliciting customers for the company's offshore diving services. Mr. Stall became dissatisfied with his compensation as a salesman and in October 1996, he resigned. After resigning, he went to the defendant's office to obtain his last pay check. Mr. Stall was told there was a deficit in his account and he would not be paid.
Mr. Stall filed suit against the defendant seeking the amount of $6,561.00, which included past due wages, consisting of unpaid vacation, commissions, and wages for one instance of working offshore. The plaintiff also sought to recover penalties and attorney fees. The defendant answered, claiming the plaintiff was indebted to Professional Divers of New Orleans for the amount of $966.33.
At the conclusion of a trial, the trial court found plaintiff had failed to prove he was entitled to any wages other than $363.00 for performing offshore work. Finding that a good faith dispute existed between the parties as to any unpaid wages or commissions, the trial court declined to award penalties or attorney fees. Both parties have appealed this judgment.

DISCUSSION
Mr. Stall filed suit against the defendant pursuant to R.S. 23:631, which reads in pertinent part:
A. (1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen *1007 days following the date of resignation, whichever occurs first.
Vacation pay, as well as commissions all, constitute "wages" under this statute. Winkle v. Advance Products & Systems, Inc., 98-694 (La.App. 3rd Cir. 10/28/98), 721 So.2d 983; Hebert v. Insurance Center, Inc., 97-298 (La.App. 3rd Cir. 1/7/98), 706 so.2d 1007.
At trial, Mr. Stall testified that the defendant's company policy was to allow five days of paid vacation for employees who had worked for the company from one to five years, and two weeks of vacation for employees who worked more than five years. Mr. Stall stated that since he began working for the company in 1991, he should have been allowed two weeks paid vacation in 1996. After taking five vacation days in 1996, he was denied requests for more vacation. On cross-examination, Mr. Stall testified that he did not accrue vacation time when he worked for the defendant as a diver, but because the vacation policy simply referred to "employees." making no distinction between divers and salesmen, he felt he was entitled to two weeks paid vacation since he had worked for the company since 1991.
Mr. Stall testified at length about the commissions he felt were owed to him as a result of his work on various projects. During his testimony, documents were introduced in an attempt to support these contentions. On cross-examination, Mr. Stall admitted that in order to be paid commission for work on certain accounts, he had to reach a sales quota of $500,000.00 per year. He testified that he did not know whether he had reached this quota in 1995 or 1996 because he could not obtain the needed records from the defendant. Mr. Stall testified that each time he requested information on his sales performance, he was told "we don't have time," or "we are working on it." Mr. Stall admitted that he had no documents in his possession which would verify that he reached his required sales quota in 1995 or 1996. Mr. Stall also admitted receiving an advance of $2,000.00 from the company. He testified that he was supposed to pay this money back to the company, but at the time he resigned, he did not know the balance of this debt. He testified, however, that he felt the commissions in addition to other amounts he was owed, would more than cover this debt.
Mr. Stall testified that in June 1996, he was told to go offshore to work as a diving supervisor for an ongoing project. He worked offshore on this project from Saturday night until sometime Monday. He claimed he was never paid for this work.
Mr. Frederick L. Tomlinson, President of Professional Divers of New Orleans, testified that when plaintiff accepted the position of salesman, he was told he would begin to accrue vacation time. Mr. Tomlinson explained that divers are paid by the job and do not accrue vacation time. As a result, Mr. Stall only became eligible for paid vacation after working for one year as a salesman. The company policy was such that he would have to work five years at a position which accrues vacation time in order to receive two weeks paid vacation.
Mr. Frederick Tomlinson, the President of Professional Divers of New Orleans, as well as Troy Tomlinson, Sales Manager, and Mrs. Lavina Tomlinson, the bookkeeper, testified that Mr. Stall was to get a commission on sales over $500,000.00 per year, but he did not reach his quota in 1995 or 1996, and this was the reason he was not paid commission.
Mr. Stall introduced a document signed by both Mr. Tomlinson and his son, Troy which stated that plaintiff would receive a commission for work plaintiff performed to secure business on an account known as CXY Energy. Mr. Frederick Tomlinson explained that although the company did secure this account, Mr. Stall resigned from his position with the company prior to the company actually securing this account. For this reason, he was not paid commission on this account.
*1008 Mrs. Lavina Tomlinson testified that she produced monthly printouts for each salesman which indicated the amount of their sales. These printouts were placed in each salesman's mailbox. Mrs. Tomlinson testified that Mr. Stall received a $2,000.00 advance which was to be deducted from his commissions. Nothing was ever deducted toward this debt because Mr. Stall did not earn any commissions.
Hilton Eymard, Jr., a salesman for Professional Divers of New Orleans, testified that he had to reach a quota of $500,000.00 per year in order to receive commissions. He further testified that all salesmen received reports on their sales either monthly or every other month. Mr. Eymard testified that in the event he disagreed with this report, he discussed it with Mrs. Tomlinson.
On appeal Mr. Stall argues the trial court erred in failing to award wages for vacation pay and commissions. We find this assignment of error to be without merit. The testimony was clear that Mr. Stall did not accrue vacation time during the years he worked as a diver. Both Frederick and Troy Tomlinson testified Mr. Stall was told when he accepted the position as salesman that he would begin to accrue vacation time. Mr. Stall did not dispute this. Rather, he relies on the wording in the company manual which refers to "employee" and does not distinguish between divers and sales. Based on the testimony and the company's vacation policy, we find Mr. Stall was paid for the one week vacation he had accrued in 1996. Thus, the trial court did not err in denying Mr. Stall's claim for vacation pay.
With regard to the commissions Mr. Stall claims he is entitled, the testimony was undisputed that in order to be paid commission, Mr. Stall had to meet a quota of $500,000.00. The overwhelming evidence is that Mr. Stall did not meet this quota in 1995 nor 1996. Hence, the trial court correctly denied his claim for commissions.
Professional Divers of New Orleans argues there is insufficient evidence to support the trial court's award of $363.00 to Mr. Stall for work performed offshore. They argue plaintiff did not produce any evidence other than his testimony that he worked offshore on these dates.
On rebuttal, Mr. Stall testified that there were several instances after he became a salesman that he was asked to work offshore as a diving supervisor. He testified that the instance in June 1996 was the only occasion in which he was not paid for working offshore. He explained that he kept a log book when he worked offshore as a diving supervisor. This log book was introduced into evidence and Mr. Stall explained the entries which included the location and depth of the dive. Mrs. Tomlinson testified that there was only one team offshore for the weekend of June 9, 1996 and plaintiff was not with that team.
In Morris v. Parish Radio Service Company, Inc., 444 So.2d 162 (La.App. 1st Cir. 1983), the appellate court affirmed the plaintiff's award of additional compensation for climbing a company owned radio tower, based on the testimony of plaintiff and a former co-worker, despite the fact that the defendant had no record that the employee had climbed the tower on these dates. Based on the testimony of plaintiff and his log book, we affirm the trial court's award of $363.00 for offshore work.
We now turn to plaintiff's assignments of error dealing with penalties and attorney fees. Mr. Stall's claim to these items is based on R.S. 23:632, which reads as follows:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty *1009 wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
This statute, being penal in nature, must be strictly construed. Our jurisprudence holds that penalties under R.S. 23:632 will not be imposed on the employer when there is an equitable defense to its liability for unpaid wages. Boudreaux v. Hydraulic Rebuilders, 98-126 (La.App. 5th Cir. 5/27/98), 713 So.2d 1148. The courts have further held that when the amount owed to the employee is subject to a bonafide dispute, penalties will not be awarded. Id. A determination by the trial court of whether a defendant employer is in bad faith is a factual question, subject to the manifest error standard of review. Hebert, supra.
Mr. Stall admitted that he received a $2,000.00 advance from the defendant which he agreed to repay and that he was unsure of the amount still owed on this advance at the time of his resignation. Mrs. Tomlinson and Troy Tomlinson testified that the advance was not repaid. Thus, there was a bonafide dispute as to the amount, if any owed plaintiff at the time he requested payment. Accordingly, the trial court correctly denied penalties.
The jurisprudence does not allow equitable defenses to be used by an employer to preclude the award of attorneys' fees under R.S. 23:632. Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233; Winkle v. Advance Products & Systems, Inc., 98-694 (La.App. 3rd Cir. 10/28/98), 721 So.2d 983. A suit is considered "well-founded" when plaintiff prevails in the trial court. Hence, since plaintiff was awarded wages, albeit, substantially less than he sought to recover, the trial court erred in failing to award attorney fees.
Plaintiff's attorney submitted documentation that he signed a contract with plaintiff to receive a percentage of the amount collected or $125.00 per hour for services rendered, whichever is greater. He introduced documentation indicating he spent a total of 26 hours working on this case prior to this appeal.
The matter of reasonable attorneys fees is to be decided by utilizing the following criteria:
1. The ultimate result obtained;
2. The responsibility incurred;
3. Importance of the litigation;
4. Amount of money involved;
5. Extent and character of the work performed;
6. Legal knowledge, attainment and skill of the attorneys;
7. Number of appearances made;
8 Intricacies of the facts involved;
9. Diligence and skill of counsel; and
10. The court's own knowledge.
Reviewing the record and applying the above criteria, considering the original demand, the results obtained and the time spent by counsel we award $1,500.00 attorney fees for plaintiff's counsel's work at trial and an additional $1,000.00 attorney fees for work performed on this appeal.
For the foregoing reasons, the judgment of the trial court awarding plaintiff $363.00 is affirmed. The portion of the judgment denying plaintiff statutory penalties is affirmed. The portion of the judgment denying plaintiff's attorney fees is reversed and the judgment is amended to award plaintiff attorney fees pursuant to R.S. 23:632 in the amount of $2,500.00. Costs of appeal to be borne by Professional Divers of New Orleans, Inc.
AFFIRMED AS AMENDED.